Filed 8/14/26  Tye v. Bordonali CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

|  |  |
|---|---|
| MATTHEW TYE, Plaintiff and Appellant, v. MARC BORDONALI, et al., Defendants and Respondents. | G064583, G064895 (Super. Ct. No. 30-2021-01205193) O P I N I O N |

Appeal from orders of the Superior Court of Orange County, David A. Hoffer, Judge. Affirmed in part and reversed in part.

Matthew Tye in pro. per. for Plaintiff and Appellant.

Kulik Gottesman Siegel & Ware and Thomas M. Ware II, for Defendants and Respondents.

Plaintiff and appellant Matthew Tye sued Avenue One Community Association, Inc. (the HOA), Property Management Professionals, LLC (PMP), and Marc Bordonali[1] for nuisance, conversion, violation of Civil Code section 4350[2], violation of Business and Professions Code section 17200, negligence, and intentional interference with contractual relations. Tye also sought punitive damages.

The trial court sustained the defendants' demurrer to the Civil Code section 4350, Business and Professions Code section 17200, and intentional interference with contractual relations causes of action without leave to amend. At a later hearing, the court granted PMP and Bordonali's motion for summary judgment on Tye's remaining causes of action for nuisance, conversion, and negligence. The court also granted the HOA's motion for summary adjudication on Tye's nuisance and negligence causes of action, as well as Tye's claim for punitive damages. Finally, the court denied the HOA's motion for summary adjudication as to Tye's conversion cause of action.[3]

Because we conclude a triable issue of fact exists as to Tye's nuisance cause of action against the HOA and Tye's conversion cause of action against PMP and Bordonali, we reverse these findings. We affirm all remaining findings.

---

[1] We refer to the HOA, PMP, and Bordonali collectively as "the defendants."

[2] All further statutory references are to the Civil Code unless otherwise indicated.

[3] The HOA and Tye later settled the conversion cause of action.

2

Avenue One Community (Avenue One) is a residential condominium project in the city of Irvine. The HOA "is a non-profit mutual benefit corporation operating, organized, and existing under the laws of the State of California." A Declaration of Covenants, Conditions & Restrictions (CC&R) "[e]stablishing a [p]lan for [o]wnership for Avenue One, recorded in the Official Records of the Orange County Recorder's Office on January 23, 2006, as [d]ocument [n]o. 2006000048530," governs the HOA. The CC&Rs were established pursuant to the Davis-Stirling Common Interest Development Act. (§ 4000 et seq.; Davis Stirling Act.) PMP manages the HOA. PMP hired Bordonali in 2019 as the HOA's general manager.

Each owner of an Avenue One condominium is a member of the HOA. Mary Robinson is the owner of the unit Tye has occupied with his girlfriend since 2016. The unit is a condominium at Avenue One. Thus, Robinson is a member of the HOA.

The unit Tye occupies has one assigned parking space. Because he and his girlfriend needed two parking spaces, Tye would park in the roof parking lot of a building near their unit. The building was owned by Avenue One. From 2016 until 2021, Tye parked in the roof parking lot without incident. In January 2021, Bordonali notified Tye that parking his vehicle in the roof parking lot was a violation of the HOA rules because the vehicle was parked for more than 21 days in a row and was parked in a lot not designated for long-term parking.

When Tye responded to Bordonali, he stated he had been parking in the roof parking lot without incident for five years and explained PMP had told him parking in the roof parking lot was not an issue. Tye also asked for a

copy of the HOA rules. In response, Bordonali explained the HOA had changed its parking lot rules and provided Tye with a copy of the updated rules. When Tye tried to move his vehicle to comply with the rules, he discovered the battery was dead. The next day, he moved his vehicle to a different parking spot in the roof parking lot.

In April 2021, the HOA amended its parking lot rules again. The HOA reclassified 77 of the 101 parking spaces in the roof parking lot from long-term to short-term parking. The reclassification left 24 spots as long-term parking spaces. Tye was unaware of this change, and because his vehicle was not parked in a long-term parking space, he received a ticket in May 2021.

Later that month, Bordonali explained to Tye that under the new HOA rules, an individual needed to submit a written request to the HOA Board (the Board) explaining why they needed long-term parking. According to Bordonali, if the Board approved the request, an individual would be limited to parking only 14 days per month, after which the individual would need to find alternative parking. Bordonali advised Tye that he could lease an additional parking space from the HOA. To do so, Tye would have to ask Robinson to sign an application and submit it to Bordonali. Tye responded to Bordonali with a different interpretation of the rules. Under Tye's interpretation, he did not need to send a written request to the Board and only needed written approval from management. Bordonali did not respond to Tye.

In June 2021, Bordonali wrote to Robinson's property manager to explain that parking requests at Avenue One had to come from the property owner, not the tenant. Bordonali also explained the 14-day limit on long-term

parking. The property manager wrote back to Bordonali. He asked Bordonali to resolve the issue with Tye directly, argued Bordonali was misinterpreting the rules, and pointed out PMP failure to resolve a fruit fly nuisance coming from the HOA's dumpsters. The dumpsters were near the unit Tye and his girlfriend were occupying. Bordonali subsequently refused to communicate with Tye directly.

In an attempt to avoid violating the HOA's 14-day parking rule, Tye parked his vehicle in his girlfriend's space and parked her vehicle in the long-term parking lot space. Tye's girlfriend's vehicle was ticketed, and she was warned her vehicle may be towed. Tye reached out to Bordonali and Bordonali's supervisor via email about the issue, indicating he would be forced to sue if the issue was not resolved. Bordonali did not respond. The day after Tye's email, Bordonali contacted Robinson about the issue. Tye tried to contact Bordonali and his supervisor again the next day because he had received another violation notice on his vehicle. Neither Bordonali nor his supervisor responded. In July 2021, Tye's vehicle was towed from the long-term parking lot.

PROCEDURAL BACKGROUND

Tye initiated this action in June 2021, asserting claims against Bordonali, PMP, and the HOA for violation of Business and Professions Code section 17200, nuisance, and negligence.

Tye filed his first amended complaint (FAC) in October 2021. He added claims of violation of section 4350, conversion, and intentional interference with contractual obligations. Six months later, the defendants demurred. The trial court sustained the demurrer to the section 4350 cause of action without leave to amend. The court explained that ownership in the

5

property was a prerequisite to standing in a section 4350 cause of action. Because Tye was a tenant and not an owner, Tye had no standing to bring this cause of action. The court sustained some causes of action with leave to amend and overruled the demurrer as to the others.

Tye filed his second amended complaint (SAC) in May 2022. The defendants again demurred. The trial court sustained the demurrer to the Business and Professions Code section 17200 and intentional interference with contractual relations causes of action without leave to amend. As for the intentional interference with contractual relations cause of action, the court determined Tye's SAC failed to show either a breach or a disruption of the contractual relationship between him and Robinson. With respect to Tye's Business and Professions Code section 17200 cause of action, the court determined Tye failed to show the defendants turned the parking lot rules into a business.

Tye filed his third amended complaint (TAC) in November 2022. At this time, three causes of action remained—nuisance, conversion, and negligence. The defendants filed a motion for summary judgment or, in the alternative, adjudication of the issues.

The trial court granted PMP and Bordonali's motion for summary judgment. First, the court explained the nuisance cause of action required proof of negligence, and negligence required that the defendants owed Tye a duty of care with respect to the dangerous condition. The court explained neither PMP nor Bordonali owed Tye a duty of care because the HOA rules did not create one, and neither PMP nor Bordonali was a landowner. Second, as to the conversion cause of action, the court determined Tye failed to show PMP and Bordonali converted Tye's vehicle because they had not towed Tye's

6

vehicle; the HOA did. Moreover, Tye had failed to submit evidence showing a question of material fact as to this element. Third, the court determined Tye failed to show a triable issue of material fact with respect to the duty of care element of his negligence claim. More specifically, Tye failed to show PMP and Bordonali owed him a duty of care because there was no special relationship between Tye, PMP, and Bordonali. Rather, the duty PMP and Bordonali owed, the duty to perform under the rules, was owed to the HOA.

The trial court denied the HOA's motion for summary adjudication on Tye's conversion cause of action but granted the motion on the nuisance and negligence causes of action, as well as on the punitive damages. The court concluded Tye's nuisance cause of action failed because he did not show how the HOA substantially interfered with his use of the residence or how the interference was unreasonable. Additionally, Tye failed to show how he was actually affected, how frequently he was affected, or how he was personally affected by the nuisance. Finally, the court explained that, even if Tye were to show a personal impact, rewording his declaration would not change the result because the nuisance would be unique to Tye alone. The court next determined Tye's cause of action for negligence failed because the HOA owed the property owners, not the tenants, a duty to maintain the common areas. Because Tye was a tenant and not a property owner, the HOA did not owe him a duty to maintain the common areas. As to punitive damages, the court concluded Tye failed to show fraud, oppression, or malice on the part of the HOA when it towed his vehicle.

The trial court overruled 13 of Tye's 17 evidentiary objections to declarations submitted by the defendants. The court also sustained 13, declined to rule on 11, and overruled three of the defendants' evidentiary

7

objections. Finally, the court sustained the defendant's objection to Tye's supplemental declaration.

The trial court entered judgment in favor of PMP and Bordonali. Tye timely appealed.

After Tye brought this appeal, we advised the parties that the July 2024 summary adjudication order as to the HOA was a non-appealable order because the trial court had not entered a judgment on Tye's claims against the HOA. In response, Tye requested that the court dismiss the HOA on his TAC with prejudice. Tye subsequently submitted an April 2026 minute order showing the court granted his request.

Combining the trial court's July 2024 and April 2026 orders, all pending causes of action alleged against the HOA have been dismissed. Because the court has not entered a signed judgment of dismissal, there is technically no appealable judgment as to the HOA. (See Code of Civ. Proc. § 581d; *Powell v. County of Orange* (2011) 197 Cal.App.4th 1573, 1577–1579.) However, we have discretion to treat the unsigned dismissal orders as a final judgment "when the ruling is sufficiently final to constitute the one judgment in the case, to promote judicial economy, to preserve a party's right to appeal, and to permit appellate review on the merits." (*Meinhardt v. City of Sunnyvale* (2024) 16 Cal.5th 643, 654.) As the appeal was not promptly dismissed as to the HOA, we opt to deem the court's unsigned orders to constitute an appealable judgment of dismissal as to the HOA. (See *Blauser v. Dubin* (2024) 106 Cal.App.5th 918, 922, fn. 4 [appeal was dismissed by this court for lack of a signed judgment of dismissal, but noting the court might opt to save appeals from dismissal if the issue was not identified prior to briefing].) Even assuming for the sake of argument that we lack the power to

8

hear the appeal as to the HOA, we would exercise our discretion to treat the appeal as a writ petition to decide the issues presented. (See *Mesa Shopping Center-East, LLC v. O Hill* (2014) 232 Cal.App.4th 890, 899.)

DISCUSSION

I.

THE TRIAL COURT RULINGS ON THE DEMURRERS

A. *Standard of Review*

"A demurrer tests the legal sufficiency of the factual allegations in a complaint." (*Ivanoff v. Bank of America, N.A.* (2017) 9 Cal.App.5th 719, 725.) On appeal after a demurrer has been sustained, we review the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory. (*Mathews v. Becera* (2019) 8 Cal.5th 756, 768.) We "'assume the truth of the complaint's properly pleaded or implied factual allegations'" (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100), but we do not credit contentions, deductions, or conclusions of fact or law. (*Mathews,* at p. 768.) We read the complaint as a whole and give it a reasonable interpretation. (*Ibid.*) We also consider matters that may be judicially noticed. (*Ibid.*)

We affirm "'if proper on any grounds stated in the demurrer, whether or not the court acted on that ground.'" (*Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 399 (*Hoffman*).) The appellant bears the burden of demonstrating the trial court erred in sustaining the demurrer. (*Id.* at pp. 399–400.)

When a demurrer is sustained without leave to amend, we also decide whether there is a reasonable probability the defect in the complaint can be cured by amendment. (*Hoffman*, *supra*, 179 Cal.App.4th at p. 400.) If

9

so, it is generally an abuse of discretion to deny leave to amend. (*Id.* at pp. 400–401.) The appellant bears the burden of demonstrating the complaint can be cured by amendment. (*Id*. at p. 401.)

An attorney or self-represented party presenting a brief to the court certifies to have met certain conditions, including that "[t]he claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." (Code Civ. Proc., § 128.7, subd. (b)(2).)

B. *Civil Code section 4350*

1. *Applicable Law*

The Davis-Stirling Act, "governs an action to enforce the recorded covenants and restrictions of a common interest development." (*Almanor Lakeside Villas Owners Assn. v. Carson* (2016) 246 Cal.App.4th 761, 773.)

Under section 4350, an HOA rule is " valid and enforceable" only if the rule is (1) "in writing," (2) "within the authority of the board conferred by law or by the declaration, articles of incorporation or association, or bylaws of the association," (3) "not in conflict with governing law and the declaration, articles of incorporation or association, or bylaws of the association," (4) "adopted, amended, or repealed in good faith and in substantial compliance with the requirements of this article" and (5) "reasonable."

2. *Analysis*

As the trial court explained, an individual who is not an owner of a condominium unit and is thus not a member of the corresponding homeowner's association lacks standing to enforce the CC&Rs or the Davis-

10

Stirling Act. (*Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1033–1036 (*Martin*).) Section 4350 is encompassed within the Davis-Stirling Act. (§§4000–6150.) Because Tye was a tenant and not a property owner, Tye had no standing to bring a cause of action under section 4350.

On appeal, Tye alleges various reasons the trial court improperly relied on *Martin, supra,* 173 Cal.App.4th 1024 in determining he lacked standing to bring a cause of action under section 4350. Tye's arguments are either unintelligible and unsupported by the record or void of coherent legal argument and or citation to legal authority. "We are not required to examine undeveloped claims or to supply arguments for the litigants. (*Maral v. City of Live Oak* (2013) 221 Cal.App.4th 975, 984–985; *Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 546 [it is not the court's function to serve as the appellant's backup counsel].)" (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52 (*Allen*).)

For example, Tye argues, "even if it were not, the proper result under the trial court's own logic would be to hold that Appellant could not invoke . . . § 4350 (b) & (c), but could still invoke (d) & (e), denying the demurrer since a demurrer cannot be granted as to part of a cause of action." It is unclear what "it" he is referring to. Tye also argues that *Martin* did not address or cite section 4350. However, Tye fails to recognize that, as mentioned above, section 4350 is encompassed within the Davis-Stirling Act. (§§4000–6150.) None of Tye's arguments cure the issue of standing, as he does not dispute that he was neither the condominium owner nor a member of the homeowner's association.

11

Finally, we reject Tye's argument that he "obviously" has standing to bring a cause of action under section 4350 because the section's purpose is "to be a check on the HOA Board's power." While it is true the Davis-Stirling Act "provides for numerous limits on the power of the board, and a system of checks on the board's power" (*Branches Neighborhood Corp. v. CalAtlantic Group, Inc.* (2018) 26 Cal.App.5th 743, 757), Tye cites no authority to support his contention that a tenant has standing to challenge a homeowner's association's CC&Rs. (*People v. Cardenas* (1997) 53 Cal.App.4th 240, 248 ["broad and conclusory assertions of prejudice are not enough; appellant must develop an argument that specifically substantiates his claim"]; *People ex rel. City of Santa Monica v. Gabriel* (2010) 186 Cal.App.4th 882, 887 [merely "asserting in conclusory fashion that [appellant] was prejudiced" is insufficient].) We thus conclude Tye has not demonstrated the trial court erred in sustaining the demurrer or denying leave to amend on his section 4350 claim against the HOA.

C. *Business and Professions Code section 17200*

    1. *Applicable Law*

The Unfair Competition Law's (Bus. & Prof. Code, § 17200; UCL) "purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." (*Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 949.) Business and Professions Code, §§ 17200 et seq., prohibits any "unlawful, unfair or fraudulent business act or practice." The UCL prohibits as unfair competition "any unlawful, unfair or fraudulent business act or practice." (*Ibid.*) The statute has been found to prohibit "wrongful business conduct in whatever context such activity might occur." (*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 111.) Whether a

12

particular act is business-related "is a question of fact dependent on the circumstances of each case." (*People v. E.W.A.P., Inc.* (1980) 106 Cal.App.3d 315, 320–321.)

2. *Analysis*

In sustaining the defendants' demurrer to Tye's Business and Professions Code section 17200 cause of action, the trial court relied on *That v. Alders Maintenance Assn* (2012) 206 Cal.App.4th 1419, 1427 (*Alders*). Based on *Alders*, the court determined Tye failed to show the defendants had turned the parking lot rules into a business. Thus, the court determined the parking lot rules did not fall within the ambit of Business and Professions Code section 17200. On appeal, Tye argues, as he did in the trial court, the HOA participated as a business because it rented, bought, and sold parking spaces.

The *Alders* court explained the UCL does not apply to a homeowners' association that "does not participate as a business in the commercial market, much less compete in it." (*Alders, supra,* 206 Cal.App.4th at p. 1427.) The *Alders* court, however, did "not foreclose entirely the notion that the UCL could apply to an association. If, for example, an association decided to sell products or services that are strictly voluntary purchases for members or nonmembers, it might be liable for such acts under the UCL." (*Ibid.*) The dispute in *Alders* concerned issues surrounding a homeowner's association election. (*Ibid.*) In conducting its election, the homeowner's association was "operating under its governing documents to maintain its premises and conduct required proceedings." (*Ibid.*) These acts "possesse[d] none of the relevant features the UCL was intended to address." (*Ibid.*)

13

Here, there is no dispute about how the HOA assigned parking spaces. At the time the property owners purchased their unit, they purchased parking spaces from the Avenue One builder. After that, the owners were permitted to lease additional parking spaces for $65 a month. The record therefore shows the HOA sold a service, the extra parking spaces, that was strictly a voluntary purchase. We agree with Tye that renting, buying, and selling parking spaces may fall into the exception outlined in *Alders.* (*Alders, supra,* 206 Cal.App.4th at p. 1427.) The defendants argue the act of leasing parking spaces is not one contemplated by the UCL because it was "merely incidental to the operation and maintenance of the HOA's property, i.e., to regulate parking within its private property." The defendants cite nothing, and we can find nothing to support this proposition.

Whether the HOA participated in a business by renting, buying, and selling spaces however is unrelated to Tye's Business and Professions Code section 17200 cause of action. Tye does not contend he ever rented a parking space or was barred from doing so. Rather, his complaint focuses on his ability to park, for free, in the long-term parking lot. Additionally, in his complaint, Tye argues the parking lot rules and regulations, not the leasing of parking spaces, are unlawful, unfair, and fraudulent. Because Tye's dispute is unrelated to the leasing of the parking spaces, his cause of action does not fall within the scope of Business and Professions Code section 17200 and he failed to plead facts sufficient to state a cause of action under the statute. Therefore, the trial court properly sustained the defendants' demurrer to the Business and Professions Code section 17200 cause of action.

14

D. *Intentional Interference with Contractual Relations*

      1. *Applicable Law*

      To establish a claim for intentional interference with contract, a plaintiff must prove "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." (*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126.)

      2. *Analysis*

      On appeal, Tye alleges, again as he did in the trial court, the defendants intentionally interfered with his contract with Robinson—the agreement to lease the unit. He alleged the HOA's act of reaching out to Robinson about the parking issue induced Robinson to raise his rent. Therefore, according to Tye, the raised rent constituted a breach of his contract with Robinson.

      As an initial matter, we note Tye did not allege his lease with Robinson barred all rent increases. Thus, Tye failed to allege how the rent increase breached his lease agreement with Robinson. Next, Tye claims the defendants called Robinson during Board meetings and threatened to fine and punish her. According to Tye, these acts were proof of the defendants' "campaign" to pressure Robinson to evict Tye. These statements are, however, unsupported by citations to the record. In any event, it appears Tye continued to reside in Robinson's property after the defendants discussed the parking issue with Robinson. This is evidenced by Tye's claim in his opening

15

brief that the defendants' attempts to have Robinson evict him have been "averted." Tye therefore failed to allege any disruption in his lease.

Because Tye failed to plead the necessary elements of his cause of action for intentional interference with contractual relations, that there was a breach or disruption of the contractual relationship between him and Robinson, the trial court properly granted the defendants' demurrer without leave to amend.

II.

TRIAL COURT RULINGS ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND OR ADJUDICATION

A. *Standard of Review*

"Summary adjudication motions are 'procedurally identical' to summary judgment motions. [Citation.] A summary judgment motion 'shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citation.] To be entitled to judgment as a matter of law, the moving party must show by admissible evidence that the 'action has no merit or that there is no defense' thereto. [Citation.] A defendant moving for summary judgment meets this burden by presenting evidence demonstrating that one or more elements of the cause of action cannot be established or that there is a complete defense to the action. [Citations.] Once the defendant makes this showing, the burden shifts to the plaintiff to show that a triable issue of material fact exists as to that cause of action or defense. [Citations.] Material facts are those that relate to the issues in the case as framed by the pleadings. [Citation.] There is a genuine issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact

16

in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 859–860 (*Serri*).)

"The trial court's ruling on a motion for summary adjudication, like that on a motion for summary judgment, is subject to this court's independent review." (*Serri*, *supra*, 226 Cal.App.4th at p. 858.) "In performing our review, we view the evidence in a light favorable to the losing party . . . , liberally construing [the] evidentiary submission while strictly scrutinizing the moving party's own showing and resolving any evidentiary doubts or ambiguities in the losing party's favor." (*Id*. at p. 859.)

B. *The Nuisance and Negligence Causes of Action*

1. *Applicable Law*

A nuisance is "[a]nything which is injurious to health . . . or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property." (§ 3479.) A cause of action for private nuisance has three elements: "First, the plaintiff must prove an interference with its use and enjoyment of its property. Second, the invasion of the plaintiff's interest in the use and enjoyment of the land must be *substantial*, i.e., it caused the plaintiff to suffer substantial actual damage. Third, the interference with the protected interest must not only be substantial, it must also be *unreasonable*, i.e., it must be of such a nature, duration, or amount as to constitute unreasonable interference with the use and enjoyment of the land." (*Today's IV, Inc. v. Los Angeles County Metropolitan Transportation Authority* (2022) 83 Cal.App.5th 1137, 1176.)

"'[T]he elements of substantial damage and unreasonableness necessary to making out a claim of private nuisance are questions of fact that are determined by considering all of the circumstances of the case' according to an objective standard: Specifically, whether a person of "'normal health and sensibilities living in the same community"' would be substantially damaged by the interference and whether an impartial reasonable person would consider the interference unreasonable." (*Chase v. Wizmann* (2021) 71 Cal.App.5th 244, 253.)

Nuisance liability is not necessarily based on negligence, thus, "one may be liable for a nuisance even in the absence of negligence." (*Lussier v. San Lorenzo Valley Water Dist.* (1988) 206 Cal.App.3d 92, 104 (*Lussier*); see also *Calder v. City & County of San Francisco* (1942) 50 Cal.App.2d 837, 839 ["'a nuisance and liability for injuries occasioned thereby may exist without negligence'"].) However, "'where liability for the nuisance is predicated on the omission of the owner of the premises to abate it, rather than on his having created it, then negligence is said to be involved. . . .'" (*Lussier,* at p. 105.)

The elements of negligence are: "the existence of a legal duty of care, breach of that duty, and proximate cause resulting in injury." (*Castellon v. U.S. Bancorp* (2013) 220 Cal.App.4th 994, 998.) "'Recovery for negligence depends as a threshold matter on the existence of a legal duty of care.' [Citation.] Whether such a duty exists and the scope of that duty are questions of law, which we consider de novo." (*Lorenzo v. Calex Engineering, Inc.* (2025) 110 Cal.App.5th 49, 59.)

18

2. *Analysis of the Nuisance and Negligence Claims Against PMP and Bordonali*

In granting PMP and Bordonali's motion for summary judgment on the negligence and nuisance causes of action, the trial court explained Tye failed to establish a question of fact as to duty. We agree.

Tye's nuisance cause of action is based on the allegation that every year between March and November, the defendants' failure to maintain their dumpsters created a major nuisance as a source of fruit flies.[4] Tye's negligence cause of action is based on the fruit fly issue as well as the allegation that PMP and Bordonali were negligent in improperly enforcing the parking lot rules.

Tye alleges PMP and Bordonali owe him a general duty of care under section 1714 as a matter of law. Section 1714 imposes a duty of care, even in the absence of a special relationship, where the defendant's own conduct, rather than that of a third party, created or increased the risk of harm to plaintiffs. (*Kuciemba v. Victory Woodworks, Inc.* (2023) 14 Cal.5th 993, 1016–1017.) However, where the defendant "did not create or contribute to the risk . . . the default duty rule of Civil Code section 1714 [does] not apply, and the starting point for our analysis [is] instead the alternate rule that generally "'one owes no duty to control the conduct of another, nor to warn those endangered by such conduct." [Citation.]' [Citations.] Under those circumstances, . . . the law does not impose a duty to control, warn, or protect

---

[4] Because Tye's nuisance cause of action is based on PMP and Bordonali's alleged omission to abate the fruit fly infestation, Tye was required to establish PMP and Bordonali were negligent in maintaining the dumpsters. (*Lussier*, *supra,* 206 Cal.App.3d at p. 106.)

19

unless there is a special relationship between the parties that "'gives rise to a duty to act.'"" (*Id.* at p. 1017.) Here, Tye does not allege PMP and Bordonali personally created the risk of harm, contributed to the risk of harm, made Tye's position worse, or personally injured Tye. Rather, the facts show it was the HOA's dumpsters that caused Tye's harm. Under these circumstances, we are unpersuaded that either PMP or Bordonali owed Tye a duty of care under section 1714.

Tye further alleges PMP and Bordonali owed him a general duty of care under section 1708. Tye, however, offers no legal analysis for this proposition. Similarly, Tye alleges PMP and Bordonali owed him a duty of care under section 3479. Tye, however, offers no case law to support this conclusory statement. "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

Finally, Tye argues PMP and Bordonali owe him a duty of care as "directors" of the HOA, citing *Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490 (*Frances T.*) to support his argument. In that case, the trial court allowed a condominium owner who was raped and robbed in her condominium to sue individual directors of the Board of her condominium association. She alleged they had breached a duty of care to her by failing to repair facility lighting and ordering her to remove lighting she had installed. (*Id.* at pp. 498, 503.) As to a director's ordinary duty of care, the Supreme Court held that "directors individually owe a duty of care, independent of the corporate entity's own duty, to refrain from acting in a manner that creates an unreasonable risk of personal injury to third parties." (*Frances T.* at p.

20

505; see *id.* at p. 506, fn. 12.) *Frances T.* is distinguishable because, unlike the plaintiff in that case, Tye is not a property owner. Moreover, unlike the respondents in that case, neither PMP nor Bordonali was a director on the Board. Thus, the case does not support Tye's argument that PMP and Bordonali individually owed him a duty of care.

Because Tye presented no evidence or legal authority establishing a triable issue of fact remained with respect to duty, the trial court properly granted PMP and Bordonali's motion for summary judgment on Tye's nuisance and negligence causes of action.

3. *Analysis of the Negligence Claim Against the HOA*

Tye again relies on *Frances T., supra,* 42 Cal.3d 490 in support of his position that the HOA owes him a duty of care under the CC&Rs. As discussed above, however, the plaintiff in *Frances T.*, unlike Tye, was a property owner. Thus, like his cause of action for negligence against PMP and Bordonali, Tye failed to establish a question of material fact on whether the HOA owed him a duty of care with respect to the maintenance of the dumpsters.

4. *Analysis of the Nuisance Claim Against the HOA*

As to Tye's nuisance cause of action against the HOA, he argues that triable issues of fact exist as to the substantial damage element. We agree.

With respect to the substantial damage element, the degree of harm is judged "by an objective standard, i.e., what effect would the invasion have on persons of normal health and sensibilities living in the same community? [Citation.] 'If normal persons in that locality would not be substantially annoyed or disturbed by the situation, then the invasion is not

21

a significant one, even though the idiosyncrasies of the particular plaintiff may make it unendurable to him.' [Citation.] This is, of course, a question of fact that turns on the circumstances of each case." (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 938.)

Here, Tye submitted evidence the flies entered his unit, landed on him while he slept, and landed on his food while he cooked. The HOA cited the measures it took to abate the fruit fly issue to support its contention that the flies' impact would not substantially annoy or disturb a normal person. The undisputed facts show the HOA hired a pest company to spray the dumpsters twice a month, bought a bug zapper, bought a deodorizing machine, bought fly traps, placed sealant around the entry doors to the room where the dumpsters were held, and hired a service to power wash the dumpsters every three weeks. The HOA's measures to abate the fly issue, however, do not go to the issue at hand, i.e, whether a normal person would be substantially annoyed or disturbed by the fruit flies. Because a triable issue of fact remains as to this element, the trial court erred in granting summary adjudication as to Tye's nuisance cause of action against the HOA.

C. *The Conversion Cause of Action Against PMP and Bordonali*[5]

        1. *Applicable Law*

        The elements of conversion are: "(1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages." (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 119.)

        2. *Analysis*

        On appeal, Tye's argument focuses on the second element of conversion—whether PMP and Bordonali's disposition of Tye's vehicle was done in a manner that is inconsistent with Tye's property rights. Tye alleges the trial court erroneously determined no material question of fact existed regarding whether Bordonali ordered Tye's vehicle to be towed. We agree.

        As the trial court explained, PMP and Bordonali submitted evidence they did not have Tye's vehicle towed. Thus, the burden shifted to Tye to submit admissible evidence showing a question of material fact exists. The evidence Tye submitted, and the court relied on was the deposition of Jason Ip, the HOA president. In his deposition, Ip explained the HOA's

---

[5] The record shows the trial court denied the HOA's motion for summary adjudication on Tye's conversion cause of action, and the parties later reached settlement on this issue. On appeal, Tye argues we should sanction the HOA for filing a motion for summary adjudication on this issue pursuant to Code of Civil Procedure section 437c, subdivision (j) because there are facts showing "clear perjury" with respect to Bordonali's declaration. Because it does not appear Tye made a motion for sanctions in the court with respect to Bordonali's declaration, he may not do so for the first time on appeal. (See *Sea & Sage Audubon Society, Inc. v. Planning Com.* (1983) 34 Cal.3d 412, 415 (*Sea & Sage*).)

security company, not Bordonali or PMP, called the tow company that towed Tye's vehicle. According to Ip, Bordonali would ask the tow companies to tow vehicles during the day. At night, the security company would run the vehicle's license plate and, depending on what it found, call the tow company. Because the tow company towed Tye's car at night, Ip testified Bordonali could not have ordered Tye's vehicle to be towed. When further questioned, however, Ip agreed Bordonali could have told security to have Tye's vehicle towed the next time security came by it. Therefore, Ip's testimony did not show, as the court determined, that Bordonali did not have Tye's vehicle towed. Moreover, in response to Tye's request for the HOA's admission that Bordonali authorized the tow of his vehicle, the HOA responded: "Bordonali authorized the tow on behalf of the [HOA]." Thus, a question of material fact exists as to whether Bordonali had Tye's vehicle towed. Thus, the court improperly granted PMP and Bordonali's motion for summary judgment on Tye's conversion cause of action.

D. *The Punitive Damages Claims*

1. *Applicable Law*

Section 3294, subdivision (a), provides the plaintiff may recover punitive damages "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Section 3294, subdivision (c)(1), defines malice as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." "'Despicable conduct' is conduct that is "'so vile, base, contemptible, miserable, wretched or loathsome that it would be looked down upon and despised by ordinary decent people.'"" (*Butte Fire Cases*

24

(2018) 24 Cal.App.5th 1150, 1159; accord, *Bartel v. Chicago Title Ins. Co.* (2025) 111 Cal.App.5th 655, 706–707.) "'Conscious disregard' means "'that the defendant was aware of the probable dangerous consequences of his conduct, and that he willfully and deliberately failed to avoid those consequences.'" [Citation.] Put another way, the defendant must 'have *actual knowledge* of the risk of harm it is creating and, in the face of that knowledge, fail to take steps it knows will reduce or eliminate the risk of harm.'" (*Butte Fire Cases*, at p. 1159; accord, *Applied Medical Distribution Corp. v. Jarrells* (2024) 100 Cal.App.5th 556, 595.)

Summary adjudication ""on the issue of punitive damages is proper" only "when no reasonable jury could find the plaintiff's evidence to be clear and convincing proof of malice, fraud or oppression."" (*Johnson & Johnson v. Superior* Court (2011) 192 Cal.App.4th 757, 762.)

2. *Analysis*

Tye sought punitive damages as to his nuisance and conversion causes of action. Tye contended the defendants' conduct was "malicious, fraudulent[,] or [in] blatant violation of law or policy.

In support of his argument that defendants acted with malice when they knowingly and willingly towed his vehicle, Tye relies on (*Taylor v. Superior Court* (1979) 24 Cal.3d 890, 894 (*Taylor*). When *Taylor* was decided, however, malice "was construed to mean malice in fact, which could be proven directly or by implication." (*Lackner v. North* (2006) 135 Cal.App.4th 1188, 1210–1211.) In 1980, the legislature amended section 3294 to define malice. (*Lacker,* at p. 1211; Stats. 1980, ch. 1242, § 1, pp. 4217–4218.) "As amended, malice, based upon a conscious disregard of the plaintiff's rights, requires proof that the defendant's conduct is 'despicable' and 'willful.'"

25

(*Lacker,* at p. 1211) The legislature again amended section 3294 in 1987 and "increased the burden of proof." (*Lacker,* at p. 1211; Stats. 1987, ch. 1498, § 5, p. 5780.) As noted above, now malice must be established by "clear and convincing evidence." (*Lacker,* at p. 1211) Here, the act of towing Tye's vehicle one time may have been overzealous or unreasonable, but it did not rise to the level of despicable conduct.

Next, Tye claims he is entitled to punitive damages on his nuisance cause of action because the defendants had knowledge of the conditions, the fruit flies, and knew the damage the flies caused Tye. In support, as he did in his TAC, Tye cites *Stoiber v. Honeychuck* (1980) 101 Cal.App.3d 903, 920. Like *Taylor*, *Stoiber* was decided before the legislative amendments to section 3294 went into effect. Thus, the *Stoiber* case is inapplicable to punitive damages. Like with his conversion cause of action, Tye was required to prove the defendants' failure to abate the fruit fly issue was despicable and willful. As described in more detail above, the evidence shows the defendants took numerous steps to alleviate the fruit fly issue. Although, according to Tye, these methods were ineffective, they show the defendants made various attempts to alleviate the issue. Thus, the defendants' acts did not rise to despicable conduct.

III.

TYE'S OBJECTIONS TO THE DEFENDANTS'

SEPARATE STATEMENT

For the first time on appeal, Tye seemingly challenges the defendants' separate statement. He alleges the separate statement is "of very poor quality." He further accuses the trial court of "unfairly [and] improperly help[ing] [d]efendants by making its own arguments against" Tye. Here

26

again, Tye does not cite any case law in support of this confusing argument. Moreover, Tye fails to specify what remedy he seeks. Because Tye did not raise his argument in the trial court, he may not do so now. (See, e.g.*, Sea & Sage*, *supra*, 34 Cal.3d at p. 417 [noting "'issues not raised in the trial court cannot be raised for the first time on appeal'"].) Finally, Tye failed to raise his judicial bias objection in the trial court. He has thus forfeited the issue on appeal. (*People v. Farley* (2009) 46 Cal.4th 1053, 1110 [party who fails to assert judicial bias in the trial court forfeits the claim on appeal].)

IV.

## THE TRIAL COURT RULINGS ON OBJECTIONS TO EVIDENCE

A. *Tye's Objections*

Tye makes various challenges to the trial court's ruling on his evidentiary objections. However, he fails to cite to the record or any legal authority. His conclusory claims that his objections were "well taken" and "should have been granted" are insufficient to support his challenges to the court's ruling. (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286–287 ["In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record"].)

B. *The Defendants' Objections*

The trial court sustained the defendants' objections on the grounds of hearsay, foundation, improper opinion, and relevance. "We review the trial court's rulings on evidentiary objections for an abuse of discretion." (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761.)

Tye appears to argue the trial court ruled on defendants' objections because it was biased against Tye and was working in the

27

defendants' favor. Like with his other arguments, Tye fails to supply the court with any citations to the record. He cites various cases that set out the general rules of foundation and relevance, but he fails to analyze their applicability to each ruling. He also fails to support his claims that the court improperly sustained the defendants' hearsay objections with citation to legal authority. We therefore determine Tye forfeited his appellate claims concerning the defendants' evidentiary objections. (See *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 156 [holding an appellant forfeits a contention by "fail[ing] to adequately support . . . [it] with cogent argument or appropriate legal or factual citations"].)

Tye also appears to challenge the trial court's rulings on the defendants' objections to his supplemental declaration. Tye's arguments are confusing and underdeveloped. He states the "trial court is not permitted to engage in willful blindness," but makes no specific challenge. Nor does he cite any case law or include any record citation in this section of his brief. As noted above, "it is not the court's function to serve as the appellant's backup counsel." (*Allen*, *supra*, 234 Cal.App.4th at p. 52.)

V.

THERE IS NO PLACE FOR INCIVILITY IN OUR JUSTICE SYSTEM

We are compelled to remind the parties just how important it is for all who rely on the justice system to always exercise professionalism and civility. "'[O]ur system of justice simply cannot function fairly and reliably with systemic incivility.'" (see *Hansen v. Volkov* (2023) 96 Cal.App.5th 94, 107.) Moreover, "civility in litigation tends to be efficient by allowing disputants to focus on core disagreements and to minimize tangential distractions." (*Karton v. Ari Design & Construction, Inc.* (2021) 61

28

Cal.App.5th 734, 747.) And while self-represented litigants do not swear or affirm the same oath as attorneys and are not held to the same ethical rules of professional conduct, they are required to understand and comply with procedural and substantive law the same as attorneys. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1247 [A self-represented party on appeal "'is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys'"].) That must include compliance with all rules and guidelines, including civility guidelines. (See Super. Ct. Orange County, Preface to Local Rules- Civility Guidelines. Online (2016) <https://www.occourts.org/system/files/civility_guidelines_-_preface_to_local_rules.pdf.> [as of Aug. 10, 2026], archived at: <https://perma.cc/NNT9-TP5N>.)

Tye's opening brief is replete with unfounded, unnecessary, and uncivil attacks on both the defendants and the trial court. For example, he states, "HOA board members are typically losers who volunteer because they lust for power [and] have too much free time." Additionally, he calls Bordonali's declaration "weasel words." Tye also accuses the defendants of using artificial intelligence to write their brief and points to a "hallucinated" quote.[6] Uncivil attacks and false accusations like these are not only derogatory but they offer nothing of substance to any issue on appeal. Instead, they detract from what otherwise may be considered valid, well-founded, well-reasoned arguments justifying relief, and they waste valuable court time and judicial resources often used to ensure all, including

---

[6] Although the referenced quote is missing an ellipsis, the text of the quote is otherwise accurate in substance.

unrepresented litigants, enjoy equal access to the justice system. (*WasteXperts, Inc. v. Arakelian Enterprises, Inc.* (2024) 103 Cal.App.5th 652, 667 ["Emotional diatribes . . . require[ ] the court to spend additional resources filtering out the hyperbole. [¶] Ad hominem attacks and other invective detract from . . . legal arguments . . . . When counsel resort to name-calling and to unsupported claims of misconduct, they risk obscuring any meritorious arguments they may have"].)

Tye offers similarly derogatory and disparaging remarks toward the judicial officer in the trial court. He categorizes the court's legal reasoning as "nonsense," "laughable on its face, and lazy." He further accuses the court of "twisting" cases and playing "a little game." While we understand the issues in this case have significantly impacted Tye's life, passion can easily coexist with respect, dignity, and civility. (See *In re Marriage of Davenport* (2011) 194 Cal.App.4th 1507, 1536–1537 ["zealous advocacy does not equate with "attack dog" or "scorched earth"; nor does it mean lack of civility"].) Like the remarks directed at defendants, Tye's comments here are unfounded, unnecessary, and counterproductive. Worse, they are attacks not only on the court but the justice system, the very system on which he relies for the opportunity to be heard in his effort to achieve a just resolution on his claims. No litigant, represented or self-represented, can seek the protections afforded by our justice system only to disparage the system when they disagree with the outcome. That is what appeals are for, and Tye has pursued his appellate rights here, successfully.

We also are compelled to comment on the professional restraint exercised by the attorneys for the defendants who did not acknowledge, much less comment on or respond to Tye's incivility. We often comment when we

see incivility by attorneys, either in their words or their actions. By the same token, we should feel equally compelled to compliment attorneys who act with exemplary professionalism and civility, particularly in the face of incivility. We therefore commend defense counsel in this case for their exercise of professionalism, civility, and restraint in refusing to engage on the same level. Responding in kind would have led only to further incivility and all that follows, from degradation of our justice system and the rule of law to wasted time and money for the parties and the court.

## DISPOSITION

We reverse the trial court's rulings granting PMP's and Bordonali's motion for summary judgment on the conversion cause of action and the HOA's motion for summary judgment on the nuisance cause of action. In all other respects, the judgment is affirmed. Parties are to bear their own costs on appeal.

DELANEY, J.

WE CONCUR:

SANCHEZ, ACTING P. J.

GOODING, J.

31